was a very narrow one, and it was whether or not Arcelia Gonzalez knew what was contained in a welded-together car part that was in a suitcase, which she readily admitted,   that she had been asked to take from Los Angeles to Iowa. The government's theory throughout the case, and was repeated often, was that no one could be that trusting, that she knew, these are quotes from the record, she knew because anyone would have known. The cross-examination of Arcelia Gonzalez was replete with questions of why didn't she ask questions? Why didn't she know more? Why would she agree to do such a thing without knowing how much she was going to be paid? Even the direct examinations of the police officers were replete with questions. I had trouble with your argument. It seemed to me that the district judge would have to look at what the proffer was and say, well, this is mostly designed to get sympathy for this poor lady. She's had a lot of bad breaks. Men have treated her terribly. And it's going to take up a lot of time and it's going to change what the trial is about from whether the lady has gotten a raw deal in life instead of whether the lady had cienter. And just in terms of that consumption of time and confusion of issues, which is one of the several grounds the judge cited, I don't see why he couldn't keep it out. And as far as its relevance goes, gosh, it just doesn't seem like there's anything extraordinary about somebody who trusts, perhaps trusts his spouse absolutely to be faithful, but is extremely wary and un-trusting in business dealings. They're different things. Unfortunately, the Court's ruling is not, as you have just stated, the Court ruled solely on relevance grounds. What the Court said was what she's done in the past is not relevant to intent or motive here. Unless you've got situations where she has done this very same thing in the past, that might be relevant. In other words, the only specific instances of conduct that would be admissible under either 405B or under 404B would be if she were able to come in and say, I was offered a drug deal in the past and didn't do it. It would have to be a similar incident as opposed to evidence which would have shown that she took people into her home who betrayed her on repeated occasions, evidence that she had a series of marriages in which she was the person who ended up being deceived, she was the person who ended up simply trusting, and yet she continued to take people into her home. The prosecutor stated what the question was, and the question was, is anyone distrusting? The defense was prevented from putting on the context for her testimony that, yes, she was. Now, I must tell the Court that we have a motion for new trial pending in this case. We did ask for a postponement of this oral argument until that could be considered. There may also be other reasons as well, and that is that what we filed with this Court in order to have it considered by the district court for the motion for new trial is extremely limited intellectual capacity, which in combination with the specific instances of conduct which she sought to introduce so that when she testified that, no, I didn't ask any questions, no, I didn't consider whether or not you could order an auto part over the Internet. Yes, when Jose Arreola simply said, go, I'll give you 70 bucks for food, I'll buy your bus ticket, and call me from Iowa. Anybody who has known someone with an IQ in this range would understand, if not accept, but would understand the argument you're making. How is this newly discovered evidence? The report of Dr. Schmidt reveals that Arcelia, and this is something that we've seen with a number of our clients, has ended up with skills, coping skills that have permitted her to mask her limited intellectual ability. And that's the issue that will be before the district court. The rule in this circuit is that the district court could deny it, but if the court were inclined to grant it, then we would be, if this case is still pending appeal, we would ask for a remand. I look at this record and I, did your office defend this? Yes, we did. Was it you? It was not. I see trial defense counsel who didn't object to the prosecution's argument about why did she, you know, after you would, your office had tried to get the evidence in, the court said no, it's out, the prosecutor then stands up in closing argument and argues why this evidence wasn't before the jury. But where is the evidence correct? Where is the evidence? There was no objection to that. There was no motion for a judgment of acquittal at the end of the government's case, right? Right. And then you have this evidence that relates to low IQ, which clearly could have had some bearing on the issue of, I mean, it's counterintuitive for folks who do not know people who operate in this intelligence range. But people who are in this range are silent when they're asked questions. They continue to trust people. But that wasn't before the court. That was not before the court, and I regret that it wasn't, and it's the reason that we have brought it before the court now to see, to allow the trial court to consider whether or not the jury verdict would have been affected. Now, the jury had a chance to hear your client and to hear testimony from friends of hers that she was an extraordinarily trusting and gullible person. Correct. And to hear the entire course of her contact with law enforcement and any explanations thereof they might have acquitted, they chose to convict. Aren't you asking us to look back and sort of second-guess what they did on an issue of credibility? No. What I'm asking this Court to do is to consider whether or not the court, the trial court, properly excluded the evidence, one. But, two, you don't need to reach that issue if you find, and particularly under the brand-new Witherspoon case which was decided Friday, I've given the court citation to additional authorities, where in that case it's an issue of prosecutorial misconduct in final argument, and there is a discussion there of what happens when there is no objection. That case was one of our office's cases as well. There were repeated objections, but on critical pieces of the prosecutor's final argument there was no objection. And the court talks to not only the responsibility, the special responsibility of the prosecutor, but also talks to the responsibility of the trial judge when that occurs. Because essentially what the jury was told was the defense attorney stood up in opening statement and said there were all these things that had happened in this woman's life that might lead you to be able to understand her conduct. Where is the evidence? The best analogy I can think of is if I stood up after a motion to suppress had been granted, it would be nothing short of misconduct and I'm not a prosecutor. And I'd ask you to enforce. Your office could have, once the judge ruled that the specific act evidence would not come in, could have said, well, judge, you at least instruct the prosecution they can't refer to our failure to introduce this evidence, right? Our office could have asked for that. But I would hope that a prosecutor would know that they shouldn't do that. I don't, I wouldn't, I wouldn't need that instruction, judge, if I had a motion to suppress granted. And I'd ask to reserve whatever time is left if I can. May it please the court. My name is Patrick Walsh and I represent the United States in this case. You tried the case? Yes, Your Honor. I tried the case. First, Your Honor, let me address the defense counsel's motion to continue. I know that this was a difficult case because as Ms. Forsman had and the trial counsel did, Ms. Gonzalez was a very sympathetic defendant. Would you have charged it if you knew her IQ was 72? I don't know. But first, Your Honor, I would have. Have you ever known anyone who had that? Judge, I haven't. Level of IQ? I have not known anyone that had a specific level of IQ like that, Your Honor. This IQ paper and pencil performance test given during the pendency of the criminal case? No, Your Honor. The IQ, this test, and I would hesitate for the court to accept these findings as fact. It may be true, it may not. But it has not been subject to testing or trial. The government has not sought its own expert. This testing occurred. I understand. My question was a hypothetical. If you had known that, in fact, through neutral and scientifically backed up testing that her IQ was 72, would you have charged the case? To be absolutely frank, I don't know enough about that IQ that I would have sought help from someone much smarter than me. But that is something that's definitely concerning. Did you ever find Jose? No, never. And as you can see in cross-examination, we only had two ways to look for him, and one was the cell phone, which was a dead end, and the other was Ms. Gonzalez, who did not provide any information for what could be many reasons. What do you think the street value of the meth that was found inside that car park? The smallest estimate, sold in bulk as it is, was $144,000, as testified on the stand. It could be as much as half a million dollars. Depending on how much it was cut. Exactly. Or in what quantities it was broken down and sold in. The court is concerned about closing arguments. And I think my comments were not quite what defense counsel says they were. We've read your comments, counsel. It sounds to me like you listened to the defense attorney say what was said in opening, and then after you found out the court was not going to allow the evidence, you stood up in front of the jury and argued that they hadn't fulfilled their promise. I was put in a difficult situation, Your Honor, where I had no chance to try to keep this stuff out in the beginning. Defense counsel, there was no prohibition against him from doing so, but he brought it up for the first time in his opening, and defense counsel was an experienced trial counsel, and some of the stuff is clearly, the appellate counsel doesn't even try to defend. The fact she was beaten as a child. The fact that she ran away from home. The fact that her father died when she was a teenager. That her boyfriend had sex with her sister. These things are very compelling and sympathetic, and this court can understand the sympathies a jury may have, because I believe this court also shares those sympathies. And there was no way for me to tell the jury that they can't consider that except in closing. And I did parallel the jury instructions. In fact, I quoted them saying the lawyer's instructions are not evidence. But the jury instructions don't tell you what they are. If they're not evidence, what are they? And so I made a reference to a promise, something that it's not. And I did try, although perhaps I could have done much more artfully, to tell the jury that there's no information before them about that, that they can't consider sympathy or specifically the things defense counsel meant in their deliberations. And I even, unlike some of the others. It's just fine for you to tell a jury that it's not a defense to the drug charge that a person has had bad things happen to them in life, and it's fine for you to tell a jury that they have to follow the instructions of the court. The only thing that's problematic is when you tell a jury basically defense counsel said he was going to prove some things and you haven't heard any evidence of those things. Yeah. On the street it's called a sucker punch. When you know that they had evidence of those things, irrelevant as they might be, and you succeeded in getting the judge to prevent them from putting on the evidence of those things. That's an issue that the appellate counsel didn't raise, but admittedly troubled me when I read the transcripts, clearly. This was my first trial at the federal level. I had been a state court prosecutor before that. And it was a hard-fought trial. So, unfortunately, I have to say I don't know if that's plain error, and that's the standard here is plain error. I did closely parallel the statute. I even stated in there what defense counsel said. I said it might be true. We don't know. So I'm not going to say it's true. I'm going to go to the flip side of this in a way. But are you familiar with our new case that's in the? I've read it once, yes. And it's. In terms of the gestalt of it, if not the, you know, it's not exactly the same kind of thing. But what effect, in your view, should that recent decision have on our consideration of this case? That decision clearly is troubling, given that here is a second allegation of prosecutorial misconduct, and also with the same office, but with a different trial prosecutor. But vouching is a separate issue here, because this was clearly in direct response to the defense counsel's bringing in clearly inadmissible evidence. But they didn't bring in any clearly inadmissible evidence. In their opening statement. Well, that's not bringing in evidence. The judge tells them it's not evidence. It's hard to unring that bell, though. Especially that they led off with she was beaten as a child. And here in a close case, that could be sympathetic. And so I believe a prosecutor should have a right to point to that specific evidence. Nonsense. You know, here I was thinking this is no big deal. And now I'm thinking, gee, maybe your office needs a lesson. You can't do this. You can't listen to evidence that the opening statement says they're going to prove, get the judge to prohibit them from proving it, and then say to the jury, they didn't keep their promise. They didn't prove what they promised you they would prove. You can't make that a trial technique. You may or may not get slapped down for it in this case. But you will. You will. It may be a much more important case. Please don't think I'm not taking these lessons to heart. I don't like being before this court in this position. But it seems to me that a prosecutor should be allowed to point to the parts of defense counsel's opening that aren't supported by the record, especially when they're highly sympathetic. Ordinarily that's true. I think the issue that makes it different here is that the reason they didn't demonstrate those things isn't just that they forgot or that their evidence wasn't as good as they had hoped, but that you, or not you personally, and I'm not trying to personalize this, but that the prosecution prevented it. In other words, if you had never made a motion and they made all these same statements, then it would have been fair game. It's the intercession of you as an actor to prevent it that makes it inappropriate, because if a lawyer gets up and says, we're going to prove A, B, C, and D, there are no motions that the trial goes forward and they only prove A and B, it's absolutely proper to say, well, you didn't ever hear C and D. But it isn't if you're the one who prevents them from hearing C and D. That's the narrow issue here. Here it feels different than appellate counsel's argument about a motion to try to keep this out in the first place, to try to never get the jury to even hear  But you're just not getting that, are you? Here's the problem. Let me make it less abstract for you. Let's hypothesize defense lawyer stands up in his opening statements and says, I'm going to prove to you the defendant wasn't even there. He was at his brother's house in Dubuque. That's the core of my case. And then the case goes forward and the defendant offers no evidence to show that he was at his brother's house in Dubuque. You can then in closing argument say in his opening statement he said he was going to prove he was at his brother's house in Dubuque. He said that was the core of his case. He offered no evidence whatsoever he was at his brother's house in Dubuque. Fine. But take the alternative where he does have evidence. His brother is prepared to testify.  The defendant is prepared to testify. I was at my brother's house in Dubuque. And for one technical reason or another, perfectly correct, let's assume, or incorrect, it doesn't matter. The trial judge says you can't put on any of that evidence. At that point, for you to say in closing argument the defendant promised you evidence that he was at his brother's house in Dubuque and he presented none makes it look like they couldn't come up with any. And that tricks the jury. It's a fraudulent way to impose a result upon the jury because it tricks them into thinking there was no evidence when there was evidence but you kept it out. Do you understand what we're concerned about now? Yes, clearly. It was not my intent to trick the jury by any means. It was only my intent to highlight this highly inflammatory comments in opening and remind them that the judge told them they can't consider it. You still could argue that sympathy can't sway them, that they have to go by facts and not sympathy because that's a more general comment. But that's not, I think, the issue that we're trying to pinpoint. I guess I say I now realize where the Court says I stepped over the line. Okay. Thank you, counsel. Judge Hopkins, I do want to correct one thing, and that is that the IQ tested by Dr. Schmidt was 76 to 78, not 72, which is slightly, slightly different. I think I would only like to respond to one question, and that is that the Weatherspoon the effect of Weatherspoon, I think there's a discussion of two principles there that are important for this case. One is the writing the scale discussion in Judge Trott's partial dissent, but she talks about the issue of invited reply. The writing of the scale occurred when the judge instructed the jury that the arguments of counsel are not evidence. The scale was even then. It was the scale that got tipped then later in the prosecutor's argument. The other principle is there is a discussion of the one unobjected to piece of the final argument in Weatherspoon and discussion of the standard there, the plain error standard to be applied to prosecutorial misconduct issues. Additionally, there's a strong discussion about as the evidence in the case for the prosecutor becomes weaker, the possibility of prejudicial effect becomes stronger. The only last thing I'd say is that the reason they didn't find Jose is because they picked up the phone and said, this is the Metropolitan Police Department, do you know R. Celia Gonzalez? So thank you, Your Honors. Never met the woman. United States v. Gonzalez is submitted.
judges: Kleinfeld, Hawkins, Graber